The United States Court of Appeals for the Ninth Circuit is now in session. Please be seated. Good morning everyone. We'll start the argument calendar this morning with the Havens v. Kilolo Kijakazi. When you're ready counsel. Thank you your honors. Please the court. My name is Chad Hatfield. I represent Mr. Stephen Havens the appellant in this in this matter. I would like to start on the issue of where this case and the review should start. Namely at the alleged onset date. I think the first place to note is that this was not the first decision by an ALJ. A prior ALJ decision was made that did not discuss the opinion of Dr. Stringer and did not fully account for the electrodiagnostic imaging in the past. Appeals counsel issued an order instructing the ALJ to discuss the opinion not given by name but the Dr. Stringer's opinion that was not addressed which was offered just six weeks prior to the filing date and also expressed concern that there's that some of the sources did not have the electrodiagnostic testing for carpal tunnel syndrome namely the state agency sources and that could affect the outcome of the decision. As we see in this claim the ALJ decision at issue now that the ALJ took the direct opposite approach. The ALJ chose to truncate the record as a whole and did not follow the AC's order to pose a hypothetical question that reflects the specific capacity limitations established by the record as a whole. I would like to start with Dr. Stringer. This opinion was authored again less than two months prior to protective filing date. The only reason offered by the ALJ for giving this no weight was that it was prior to the protective filing date and in this situation there's been some disagreement. The federal district court seemed to support contentions that anything before the alleged onset date is of little relevance. However this was not prior to alleged onset date but simply the protective filing date. The code of federal regulations indicates the agency will develop a complete medical history of a claimant for at least the 12 months preceding the month in which you file an application unless the claimant asserts the disability began less than 12 months prior to filing. That's 20 CFR 416.912B. Mr. Hatfield, I'd like to ask you a question about this because it seems that I had a hard time figuring out when the real onset date is that's relevant for our consideration. In the application date and briefs there's an allegation it's June 1st 1995. In the hearing before the ALJ in 2016 your client counsel represented that the onset date was January 6, 2012 which I believe is a 2009 might be an onset date as well. What what is your position as to the appropriate onset date? The appropriate onset date your honor remains 1995. There was no amendment of the onset date. There was only the recognition that the protective filing date and benefits could be paid made table only to the protective filing date. Now again that raises the question and it was not a issue raised on the reply brief as being pointed out was that even the protective filing date is not really clear in this case as Mr. Havens did assert an alleged onset date prior to the prior to the previous application and therefore is an implied request for reopening and Dr. Stringer's opinion would be new and material evidence submitted within two years and before reopening. That was just to say if it was the protective filing date even Dr. Stringer's opinion would not necessarily be kept out of that but of course it is the alleged onset date or we know that just as a practical matter is often the medical opinions directions objective medical efforts that comes in that prompts an individual to apply for social security disability. That's why the regulations required updating of the medical records. Your answer is less than clear at least for my understanding. What is the period of time that you want us to consider the medical evidence in this case? Well I think as discussed at the hearing the evidence from 2000. Just tell us what period of time should the ALJ have looked back to in evaluating Mr. Havens condition from one to one? At least back to 2009 as noted at the hearing say this is an objective evidence was supportive of it. Is that permissible given that the prior applications were denied? Were the prior decisions reopened? Yeah the prior decisions to be reopened. The only decisions was an ALJ dismissal which is not a decision on the merits and the other claims were reopenable through new and material evidence as we have for Dr. Stringer. There are no constraints for the ALJ going back and considering the time period back to 1995 or 2009 when we have the objective electrodiagnostic evidence. So is your view is it your position that from 1995 until the date of his application that's the period of time? Yes your honors and of course there are some practical concerns here. I know that it may seem we'll just state the day of course if we say Mr. Havens says okay I didn't go to the doctor and get testing until 2009 but I've been disabled since 95 the judge will raise the concern hey you didn't work for the years from 95 to 09 I can use that as a factor against your credibility. So Mr. Havens does need to assert alleged onset date for when he felt his conditions kept him from being able to work full time. And when is that? 1995. Okay so what is your argument that it's a legal error for the by the ALJ for failing to consider all the past medical evidence? Right yes and particularly Dr. Stringer's opinion. The pills council even ordered that opinion to be considered and weighed just weeks prior to the effective filing date clearly at issue. It was an opinion for that was stated the condition was deteriorating the last at least 12 months and yet the ALJ again gave no reason other than just stating it was before the protective filing date. That is a an error in itself is that potentially just dispositive opinion and also that opinion supports the later opinion of the treating source nurse Rosa Faustin who had given the opinion for sedentary work with a need to miss days due to pain. Um in that opinion again the ALJ didn't consider the opinion of Dr. Stringer even some of the 2009 opinions by other sources giving similar opinions in their decisions. Uh the ALJ seems to focus on for reasons uh Dr. Opara which is noteworthy that the ALJ had said in the prior the prior ALJ said found that given that little weight due to Dr. Opara not having electrodiagnostic evidence and Dr. Opara not really considering all the impairments. Uh with further evidence which came in afterwards uh which Nurse Faustin had cited new x-rays showing significant stenosis and exam findings now straight leg raising that there was a deterioration as opined by Dr. Stringer. So it adds up um to where that this was legal error as a judge cut out so much of the relevant evidence by simply conflating the protective filing date and alleged onset date. Did you want to save the rest of your time? Yes I'll I'll consider this my time thank you. Go ahead. Good morning Diana Ansager on behalf of the commissioner and asking this court to affirm the district court's decision that the ALJ's decision is supported by substantial evidence and free of legal error. At the outset I would like to clarify something um the ALJ did not discount Dr. Stringer's opinion nor Nurse Segrin's nor PAC Thompson's opinion simply because they were too remote. If you look at page 24 of the ALJ's decision if you don't mind indulging me at the bottom of at the second full paragraph at the bottom of that page the ALJ writes reports it does state that one of the reasons they are not relevant is because they are too remote but it also states that these are not consistent with the evidence that documents few findings. Now the citations that the ALJ has for this this is um b7f 1 through 4 and b7f 9 through 12 that is doc that is Nurse Poston and uh PAC Thomason and 13f is Dr. Stringer. So it is accurate to say that the ALJ addressed all of these opinions and gave valid reasons for discounting them. What is what is your position as to the alleged onset date in this case? In terms of the reopening or in terms of what the ALJ should have looked at? Uh either one. Okay so under the regulations the ALJ is required to look at excuse me let me back up for a second. So Havens would be entitled to benefits only from 2012 January 2012 forward however under the regulations it's true that the ALJ has to look back at least 12 months so the ALJ has an obligation to look back until say January 2011 and some discretion to look back at the earlier evidence. Now that but according to page 24 the ALJ did actually look at all the evidence but considered whether or not Havens was entitled to benefits after 2012. So I think there is some ambiguity certainly with the hearing testimony that your honor mentioned and the ALJ's decision about what exactly is the alleged onset date but it really doesn't matter because the ALJ did consider all of the evidence going back to 2009. Now I'd like to add this case turns on a fairly sparse treatment record with minimal findings and multiple conflicting opinions from treating sources treating nurses physicians assistants and consultative examinations. In light of this fair record and the multiple conflicting sources sure so let's go back to that statement that you pointed us to reports are too remote in time and are not consistent with the evidence that documents documents few findings. What is the ALJ talking about? This is a conclusion paragraph the ALJ is referencing all of the medical evidence that precedes this the the mild to moderate findings the mildly in the substantial evidence of Dr. Opar examination. Dr. Opar was a consultative examiner. I was going to say the sentence though as I read it is rather ambiguous. I don't agree that it's ambiguous because it refers to the preceding discussion which is quite clear and repeatedly mentions that there are few objective findings there are few treatment records are you that is instead of having the ALJ repeat all of the evidence there it is I think we can infer that this is referring to the prior paragraphs under Lambert the ALJ does not have to reiterate everything does not have to write a dissertation this is a summary paragraph discussing how the objective and medical findings and treatment records do not support Haven's Okay. So if I could go back to Dr. Opar for a minute I just want to point out that Dr. Opar is substantial evidence in support of the ALJ's decision under Tanepedian Dr. Opar who is a physician he did a consultative examination in 2012 a few short months after Dr. Stringer's opinion and he found no limitations. Now this is really notable he did he was aware of all Haven's alleged impairments he did extensive testing he found very few limitations he found no limitations actually he found he had a negative phalans and negative channels and a normal range of motion a normal gait and intact sensation so I don't want to belabor his his points because they're on the record but I do want to point out that the ALJ given the extensiveness of this examination and the fact that it was within the time period reasonably relied on this. Dr. Opar made his own independent findings and he was a physician and as I stated under Tanepedian this equates to substantial evidence. Now there's a lot of evidence in this case and it's a lot of it is conflicting but some of the evidence is very far outside the period from 2009 and and directly contradicted by Dr. Opar. Other evidence is closer in time such as Dr. Stringer's but it is also inconsistent with not only Dr. Opar's examination but the many many mild findings within the record. I'm happy to go into more of that if the court wants but I know you're familiar with the record. Does the record show whether Dr. Stringer examined Haven's for the November 2011 opinion? I see a reference to report from records and it wasn't clear whether he was the examining doctor for purposes of that opinion. Judge that's actually a great point. It is ambiguous. It looks to be that record appears to be a mix of it does have some findings such as blood pressure which suggests she did examine him but it also says that she reviewed the report from records so I think it is unclear whether she examined him or not but she certainly did not do the extensive examination that Dr. Opar did and Dr. Opar documented in the record. Now if I could address the terms of the reopening issue, I do want to point out that there's no indication that when he submitted Dr. Stringer's opinion it was an implied request for reopening. There's simply no indication of that. There's no indication he submitted it within 12 months and not only that but given that Dr. Stringer's opinion was in 2011 it is entirely immaterial to the prior decision which the period ended in 2012. So really there's no standard under which Dr. Stringer's opinion would constitute a valid reopening. Now it's interesting that with the ambiguity about the onset date under Social Security Hallux, an earlier onset date can be an implied request for reopening. However, there's really no indication that he meant this year and in fact at the hearing as Judge Pius pointed out it contradicts that in fact suggests he was alleging 2012 as the onset date. So we can hardly fault the ALJ for not considering this an implied request to reopen and in any event it is pretty immaterial because as I said the ALJ did consider evidence going far back to say 2009. He didn't consider evidence going back to 1995 because that's really not in this record. And on Appellant's point about the Appeals Council, the ALJ did everything the Appeals Council instructed. It considered carpal tunnel syndrome to be severe but found that it was not because there was absolutely no treatment for it after 2010 and that is a valid reason to find an impairment not severe. I also want to point out that although the ALJ gave Dr. Opara's examination and opinion wait, he also credited some of Haven's complaints. So Dr. Opara had found that Haven's had no limitations and the ALJ says in the decision I'm going to credit some of his complaints due to pain disorder and then he added on restrictions that are consistent with some of Haven's complaints and with some of the opinions of the treating sources that he discounted such as postural limitations for Haven's neck or reaching a manipulative limitation and of course an exertional limitation to light work. So given all that the ALJ is really giving Haven's the benefit of the doubt. He is looking backwards. He's evaluating everything and its limitations to inform the RFC. If there are no further questions, I would ask the court to affirm the ALJ's decision and I thank you for your time. Thank you. In response to the reliance on Dr. Opara's opinion, it is important for the court to only those reasons offered by the ALJ. The ALJ found that the finding of Dr. Opara of normal wrist joint and finger joints to be inconsistent with Dr. Haven's complaints of numbness and tingling of his fingers. This is where it is the Ninth Circuit has often asked the ALJs to resist the temptation to play doctor as wrist joints and finger joints are not related to the carpal tunnel syndrome. The gold standard for testing that is electrodiagnostic testing of carpal tunnel syndrome which would be on the record. This was given as an advisement by the Appeals Council and the ALJ ignored it and was off. Another thing to point to is the weight given to the statements of Mr. Haven's. It is very important that the ALJ, the reason she gave and it was cited by the commission over five times, the ALJ said that Mr. Haven's testified to an inability to pick up things and cited to transcript page 6061. If we look at that record, Mr. Haven said he has problems with his hands when he does too much or for things for too long. The ALJ authored an inconsistent statement that's been repeated through the record and uses the reason to discount his allegations. The same was mowing the lawn, doing laundry and such as he testified that 10-15 minutes he has to take a bath, helps him, finishes the lawn mowing, does the laundry for him. The ALJ missed the entire point is that he is talking about when doing things on a consistent ongoing basis, repetitive activity, he is not able to endure those things. That was on the basis of his disability. Those things are not well found by a constant examination of a few minutes and certainly not by the findings that the ALJ found. The opinion of Dr. Stringer offers six weeks before regardless of reopening, which it is found to be new and material, is an appropriate basis with two years of the initial denial of the prior application. So for those reasons, it is highly critical of this case. It is material, it is harmful errors, it would change the judge's RFC and it further supports the disabling opinion of Nurse Poston. And for those reasons, Mr. Haven's request a remand in his name. All right. Thank you very much, counsel, for both sides for your argument. The matter is submitted. The next case is
judges: PAEZ, NGUYEN, Tunheim